UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TACCARA MESTETH, also on behalf her children G.R.L., Z.J.H.H., J.P.H.H., L.J.H.H., L.A.H.H., C.C.M., O.J.M., and X.P.M., <br><br> Plaintiff, <br><br> vs. <br><br> JENNIFER ODEGARD; DEPARTMENT OF SOCIAL SERVICES; SHAWNDAI STANDING CLOUD; MISTY MCALLISTER; MIKE VAN SAVOY; ROXIE ERICKSON; HIEDIE LINNGREN; BETSY HARRIS; and JOSEPH ASHLEY PARR, <br><br> Defendants. | 4:23-CV-04135-RAL <br><br><br> OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING FOR DISMISSAL |

Plaintiff Taccara Mesteth (Taccara) filed a pro se lawsuit pursuant to 42 U.S.C. § 1983. Doc. 1. Taccara moves for leave to proceed in forma pauperis and to appoint counsel. Docs. 3; 4. Taccara also filed a request for production of documents from the Seventh Judicial Circuit Court in Pennington County, South Dakota. Doc. 7.

I.   **Motion to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court.

Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). Taccara's financial affidavit shows that she has insufficient funds to pay the filing fee. Thus, Taccara's motion for leave to proceed in forma pauperis, Doc. 3, is granted. This Court now screens Taccara's complaint under 28 U.S.C. § 1915(e)(2).

## II.     1915 Screening

### A.     Factual Background

Taccara claims that the defendants violated her and her children's rights by removing the children from her custody. Doc. 1 at 1–3. Taccara sues defendants on her behalf and on behalf of her eight minor children: G.R.L, Z.J.H.H., J.P.H.H., L.J.H.H., L.A.H.H., C.C.M., O.J.M., and X.P.M. Id. at 1–2.

In August 2022, Mike Von Savoy, an employee of the South Dakota Department of Social Services (DSS), removed three of Taccara's children, G.R.L., L.J.H.H., and L.A.H.H., from the custody of Taccara's mother, Sonji Black Bear. Id. at 3. Von Savoy would not explain why G.R.L., L.J.H.H., and L.A.H.H. were being taken; he stated, "we will find out at court on Monday." Id. Taccara claims that "Von Savoy was in such a rush to Kidnap [her] children that he failed to bring proper car seats for [L.J.H.H.] and [L.A.H.H.]. He asked [Taccara] to give him [hers]." Id. at 3–4. Taccara claims that prior to the removal of her children she only had one meeting and one phone call with Von Savoy and that "wasn[']t enough to make any accurate investigation decisions." Id. at 11. Taccara claims that she was recording live on Facebook when her children were taken; police officers informed her that her children were taken because she had other children in DSS custody, and the officers were "[t]elling [her] that [she] should start acting like a mother." Id. at 4.

2

On November 17, 2022, Judge Heidi Linngren, a circuit judge in South Dakota's Seventh Judicial Circuit, ordered that Taccara was to have visits with her children while Taccara was incarcerated. Id. at 6. Taccara claims that November 17, 2022, was the last time that she saw her children, but while at the Pennington County Jail, she had one visit with her children through Zoom. Id. Taccara alleges that DSS Employee Shawndai Standing Cloud promised to send pictures and updates, but Taccara has received only two very vague updates. Id. at 2, 6, 11. On December 1, 2022, Taccara was moved to the South Dakota Women's Prison (SDWP), and she claims that she never saw her children again. Id. at 6. Taccara claims that when she was moved to the SDWP, Jennifer Odegard, an employee of DSS, "wanted [her] to sign a paper admitting to the fictional statements [Odegard] concocted from her sinister imagination. [Taccara] refuse[d] to admit to [Odegard's] twisted and slanted view of [her]." Id.

On February 10, 2023, Taccara's Attorney, Joseph Ashley Parr, told Taccara "that no matter what good [she] ha[d] done or will do [her] parental rights will be terminated and [her] rights will be terminated to [her] unborn baby because [she] won't take accountability." Id. at 5. Taccara claims that she does "not want to take accountability for things [she] ha[s] not done." Id. Parr, Odegard, and Standing Cloud informed Taccara that she could possibly get her case turned around if she admitted to using drugs. Id. Odegard had also allegedly promised Taccara's husband, Kenneth Mesteth, custody of C.C.M. and O.J.M. if he signed a protective order against Taccara. Id. The same promise was allegedly made to Black Bear that if she signed a protective order against Taccara then Black Bear would receive custody of Taccara's children including her unborn baby. Id.

Also, on February 10, 2023, a custody hearing was held before Judge Linngren. Id. at 7. During the hearing, Von Savoy testified that Taccara was financially capable to care for her

3

children, but Taccara claims that Von Savoy incorrectly testified that Taccara's finances came from her marriage. Id. at 4. Von Savoy also testified that Taccara remained calm when her children were removed in August 2022. Id. During redirect, Pennington County Deputy State's Attorney Roxie Erickson "proceeded to lead Mike Von Savoy to get her desired outcome." Id. Parr did not object to Erickson's questioning. Id. Taccara claims that Betsy Harris, a private attorney, presented in court a letter that was illegally taken from G.R.L. and made false statements about the letter. Id. Taccara also alleges that Harris made an assumption that she presented as fact about Taccara's release date from jail. Id. at 4–5. Taccara was released from jail on July 8, 2022, but Harris stated that Taccara was released on June 26, 2022, and that Taccara was present and knew that her brother Skyler Warrior was shot at his apartment. Id.

During the hearing, Judge Linngren took away Taccara's visitation rights. Id. at 7. Taccara had written that "while incarcerated [she] would want [her] children placed with [her] mother Sonji Black Bear. [Judge] Linngren held up [Taccara's] notarized statement telling that wasn't [hers] to give away." Id. Taccara also claims that Judge Linngren threatened Black Bear with perjury and did not allow Black Bear to take the stand. Id. Taccara claims that she felt intimidated and believes that Judge Linngren has a vendetta against Taccara's family. Id. Judge Linngren has previously terminated the parental rights of her brother, Skyler Warrior. Id. Taccara claims that Judge Linngren knew about her rights being violated, and Taccara has written multiple letters to Judge Linngren informing her of the concerns. Id. Taccara claims that "[i]t was proven by all who testified that [Taccara] was acting to protect [her] children." Id. at 4. But Judge Linngren terminated her right to visitation. Id. at 7.

Taccara claims that Odegard has lied to her since their very first meeting in April 2022. Id. at 5. Taccara then requested that her attorney be present at all other meetings with DSS, but Parr

4

said that Tacarra's rights were sure to be terminated if she took that route.[1]  Id. at 5–6.  Tacarra claims that Standing Cloud accused her of not picking up an application that Odegard had filled out for housing assistance through Volunteers of America.  Id. at 7.  Odegard claimed that she informed Taccara of the housing assistance during a phone call after Taccara's grandmother passed away in March 2022.  Id. at 8.  Taccara alleges that "[a]t this point because of being traumatized by Jennifer's Lies [Taccara] was recording all communication."  Id.  Taccara claims that when she informed Odegard that she was recording, Odegard became angry for being caught in a fib and told her that she cannot record, which is DSS's policy.  Id.  Odegard said that Standing Cloud would supply the policy, but Taccara has never seen the policy.  Id.  Taccara complained to DSS employee Misty McAllister, but McAllister did nothing.  Id.

McAllister added Taccara's name to a central registry based on false information.  Id.  Taccara appealed the false information, but McAllister denied her appeal.  Id.  McAllister stated that Taccara had pled guilty to domestic violence on Z.J.H.H. in July 2022.  Id.  Taccara claims that she did not plead guilty and that the charge was dismissed in November 2022.  Id.  Taccara alleges that the dismissal of the charge was brought up and ignored by Judge Linngren and Parr.  Id. at 8–9.  Taccara claims that "Roxie Erickson has allowed all of this to go through.  She has stood on the side and supported every misconduct and mistreatment."  Id. at 9.

Taccara alleges that she was not offered any type of family therapy.  Id.  Odegard told Taccara that there were resources, but the only resource offered was bus passes, which Taccara has been waiting for since August 2023.  Id.  Taccara claims that her "reunification with [her]

---

[1] Taccara also claims that Parr "was not protecting [her] rights."  Doc. 1 at 6.  She claims that Parr "has been completely judgemental [sic] and has left [her] to build [her] case all on [her] own, leaving to fumble and make mistakes because [she] ha[s] never been in an A and N proceeding before."  Id.  Taccara also claims that "Parr violated [her] right to Attorney client privilege when he told [her] brother Faron Mesteth that [she] was going to lose [her] case with DSS."  Id. at 9.

5

children showed no advancement when Shawndai Standing Cloud informed [her] that she is only required to make minimal efforts." Id. Taccara also alleges that she was offered no solution when she gave birth during the COVID-19 pandemic and became severely depressed. Id.

Taccara alleges that her First Amendment right was violated because she and her children were not allowed to speak for themselves. Id. at 3. She also claims that her Fifth Amendment right was violated because "Odegard ask[ed] [her] and [her] children leading and manipulative questions. While Extracting, twisting and deforming [their] words to fit her desired out come [sic]." Id. Taccara claims that her Sixth Amendment right was "violated when Roxie Erickson States Attorney accused [Taccara] of assault[, but Taccara] ha[s] witnesses that know it wasn[']t [her]." Id. at 1. Taccara claims that her Ninth Amendment rights were "violated by Shawndai Standing [C]loud and Misty McAllister when they completely and knowingly ignored mistreatment, false accusations, intimidation, and neglect by Jennifer Odegard." Id. at 2. See also id. at 11. Taccara claims that her Fourteenth Amendment rights were violated by Odegard, DSS, and Standing Cloud "when they denied [her] right to be involved with the decisions involving the movement of [her] children." Id. at 2. See also id. at 11. She claims that Odegard violated G.R.L.'s Fourth Amendment right when Odegard "searched a [sic] seized a letter [G.R.L.] had on her property." Id. at 1.

On September 15, 2023, Taccara emailed Parr asking for the closed files for her abuse and neglect proceedings. Doc. 7 at 1. She also informed Parr about her complaint filed with this Court. Id. On October 27, 2023, Taccara was in Rapid City, South Dakota, and Parr asked her to meet with Odegard about her abuse and neglect case. Id. Taccara thought she was being manipulated and did not want to meet with Odegard because she thought that would be detrimental to her federal case. Id.

6

On October 30, 2023, Black Bear called Taccara because Black Bear's attorney had informed her that Parr had withdrawn from Taccara's state case. Id. Taccara was not informed directly from her attorney or any agency that Parr had withdrawn. Id. Taccara made several phone calls to learn if she was appointed a new attorney, and the Public Defender's Office in Rapid City informed her that her new attorney was Jeff Fransen. Id.

On November 1, 2023, Taccara called Fransen and retrieved the Zoom code for her transfer hearing; the Cheyenne River Sioux Tribe was transferring her case to tribal court. Id. On November 2, 2023, Taccara called Fransen to ask how her state case would proceed now that her "Us code complaint" was acknowledged. Id. Fransen said that her hearing in the state court would need to be rescheduled. Id. Taccara wanted the hearing to go forward, but Fransen refused, saying the hearing will have to be rescheduled. Id. On November 2, 2023, Taccara entered the Zoom hearing; Taccara alleges that Judge Brown accused her of delay tactics and threatened to take away her attorney. Id. Taccara wanted to request the transcript from her hearing on November 2, 2023, but she was afraid because of how hard it has been for Black Bear to request transcripts and was afraid of retaliation. Id. at 1–2.

Taccara claims that her First, Fifth, Sixth, Ninth, and Fourteenth Amendment rights were violated. Doc. 1 at 1–3. She also cites to several United States Code sections that she believes fit her situation: (1) 18 U.S.C. § 1513, (2) 18 U.S.C. § 242, (3) 18 U.S.C. § 241, (4) 42 U.S.C. § 3631, (5) 18 U.S.C. § 1589, (6) 18 U.S.C. § 1592, (7) 18 U.S.C. § 1593, and (8) 42 U.S.C. § 12203. Id. at 3. Taccara claims that Odegard violated G.R.L.'s Fourth Amendment rights. Id. at 1.

Taccara claims that she has suffered along with her children severe emotional stress. Id. at 11. She claims that she has signs of post-traumatic stress disorder and that she is "sure [her] children are going through the worst of it being that they have multiple new diagnosis." Id.

Taccara requests $60 million "for the severity of the emotional trauma mental abuse that [her] children and [Taccara] have suffered. Lost wages. Lost housing assistance opportunity and sever[e] reputational and unreversable [sic] damage." Id. at 12. She also requests the following relief: (1) a fair chance to regain custody of her children, (2) change of venue, (3) reassignment to a local case worker, and (4) a different attorney. Id. at 11.

## B.    Legal Standard

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v.

8

Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### C. Legal Analysis

#### 1. Indian Child Welfare Act Claim

Construing Taccara's complaint liberally, she asserts a claim under the Indian Child Welfare Act (ICWA) for custody of her children. See Doc. 7 at 1. Taccara alleges that "Cheyenne River Sioux Tribe was transferring [her custody] case to tribal courts" on November 2, 2023. Id. Under ICWA,

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

9

25 U.S.C. § 1914. See also Jumping Eagle v. Warren, 28-CV-4131-LLP, 2021 WL 462644, at *7 (D.S.D. Feb. 9, 2021) (holding that federal courts are courts of competent jurisdiction for § 1914). An " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4). Although Taccara claims that the "Cheyenne River Sioux Tribe was transferring [her] case to tribal courts[,]" her complaint does not allege that her children are within the definition of "Indian child." Doc. 7 at 1.

Even if Taccara's children meet ICWA's definition of "Indian child," Taccara has not alleged a violation of 25 U.S.C. §§ 1911, 1912, and 1913. Taccara does not allege that the state court lacked jurisdiction to conduct custody and visitation hearings or that she was denied the right to intervene in the state child custody proceedings; thus, Taccara has not asserted a claim under 25 U.S.C. § 1911. See Docs. 1, 7. Taccara does not allege any violations of the requirements of notice, appointment of counsel, examination of reports, remedial rehabilitative services, foster care placement orders, or parental rights termination orders; thus, Taccara does not allege a violation of 25 U.S.C. § 1912. See Docs. 1, 7. Because Taccara does not allege that she voluntarily consented to the removal of her children, she has not asserted a claim under 25 U.S.C. § 1913. See Docs. 1,7. Because Taccara has not alleged a violation of 25 U.S.C. §§ 1911, 1912, or 1913, her claim under ICWA is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.     Claims Against DSS

Taccara sues DSS. Doc. 1 at 1. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh

Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

The South Dakota legislature created DSS by statute as a state governmental agency. See SDCL § 1-36-1. DSS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. See Cory, 457 U.S. at 90–91. Thus, Taccara's claims against DSS are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. Official Capacity Claims for Money Damages

Because Taccara does not specify whether she is suing the defendants in their individual or official capacity, the suit is treated as only including official capacity claims. Doc. 1; Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995). Black Bear thus sues Odegard, Standing Cloud, McAllister, Von Savoy, Erickson, Harris, and Judge Linngren in their official capacities for money damages. See Doc. 1. Odegard, Standing Cloud, McAllister, Von Savoy, Harris, and Judge Linngren are employees of the State of South Dakota. As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66. The Eleventh Amendment generally acts as a

11

bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. Thus, Black Bear's claims against Odegard, Standing Cloud, McAllister, Von Savoy, Harris, and Judge Linngren in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii).

Erickson is an employee of Pennington County. "A suit against a government officer in his [or her] official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Taccara's claims against Erickson in her official capacity are the equivalent of a lawsuit against Pennington County. See id. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694 (1978). "A county may be liable for violation of constitutional rights if the violation was caused by its customs or policies." American Horse v. Pennington Cnty., CIV. 17-5034-JLV, 2017 WL 2539757, at *2 (D.S.D. June 12, 2017) (citing Crawford v. Van Buren Cnty., Ark., 678 F.3d 666, 669 (8th Cir. 2012)). Here, Taccara has not alleged that her rights were violated based on Pennington County's customs or polices. Thus, Taccara's claims against Erickson in her official capacity for money damages are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4. Claims for Injunctive Relief

Taccara requests the following injunctive relief: (1) a chance to regain custody of her children, (2) a change of venue for her state child custody case, (3) an assignment of a local case worker, and (4) a different attorney. Doc. 1 at 11. The injunctive relief that Taccara requests relates to her underlying state child custody hearings. See id.

The Supreme Court of the United States has held that federal courts should not enjoin pending state proceedings and prosecutions absent extraordinary circumstances. Younger v.

Harris, 401 U.S. 37, 54 (1971); Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Younger abstention is appropriate where: "(1) the existence of an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004).

Here, Taccara claims that she has a state child custody hearing pending. Doc. 1 at 7. Child custody hearings implicate an important state interest. Alamo Christian Ministries v. Selig, 664 F.3d 1245, 1249 (8th Cir. 2004) ("[T]here is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of the [Younger] doctrine."). Taccara has not shown that the South Dakota law somehow impedes her from raising constitutional challenges in the state court case. Thus, because all elements for Younger abstention are met, this Court abstains from exercising jurisdiction over Taccara's claims regarding her state child custody proceedings.

However, Taccara claims that the "Cheyenne River Sioux Tribe was transferring [her] case to tribal courts[.]" Doc. 7 at 1. If her child custody case was somehow transferred from state to tribal court, her claims seeking injunctive relief would become moot.[2] The United States Court of Appeals for the Eighth Circuit has held that a case can be dismissed as moot when "changed circumstances have already provided the requested relief and eliminated the need for court action." Libertarian Party of Ark. v. Martin, 876 F.3d 948, 951 (8th Cir. 2017) (cleaned up) (quoting Teague v. Cooper, 720 F.3d 973, 976 (8th Cir. 2013)). Additionally, "while federal question jurisdiction may exist to review a tribe's jurisdiction over non-members, it does not exist to review a tribe's

---

[2] Younger abstention principles likewise would militate for this Court to abstain in favor of allowing a tribal court to adjudicate custody and visitation issues within its jurisdiction.

civil jurisdiction over its own citizens, second-guess tribal membership decisions, or *intervene in tribal child custody proceedings.*" Richman ex rel. C.R. v. Native Vill. of Selawik, 2023 WL 3764599, at *8 (emphasis added) (citing John v. Baker, 982 P.2d 738, 758 (Alaska 1999). See also Montana v. United States, 450 U.S. 544, 564 (1981). Thus, Taccara's claims for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Claims Against Parr and Harris

Taccara sues Parr, who was her counsel during her child custody hearing. Doc. 1 at 4. Taccara also sues Harris, another private attorney involved in her child custody hearing. Id. A § 1983 claim may be brought only against state actors for violations of a federal statutory or constitutional right. 42 U.S.C. § 1983. "[A] private party may be held liable on a § 1983 claim if 'he is a willful participant in joint action with the State or its agents.' " Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)). "[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." Id. Here, Taccara has not alleged that Parr and Harris were willful participants in joint action with state agents. Thus, Taccara has not alleged a claim against Parr and Harris under § 1983, and Taccara's claims against Parr and Harris are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

This Court would lack diversity jurisdiction under 28 U.S.C. § 1332 over any such claims. Presumably Taccara, Parr, and Harris are all citizens of South Dakota. Taccara does not allege the existence of diversity jurisdiction.

### 6. Claims on Behalf of Taccara's Children

Taccara alleges claims on behalf of herself and her children. Doc. 1 at 1–2. The Eighth Circuit has held that "[n]on-attorney parents cannot litigate *pro se* on behalf of their minor children, even if the minors cannot bring the claim themselves." Crozier for A.C. v. Westside Cmty. Sch. Dist., 973 F.3d 882, 887 (8th Cir. 2020) (citing Myers v. Loudoun Cnty. Pub. Schs., 418 F.3d 395, 401 (4th Cir. 2005)). Because Taccara is unable to litigate pro se on behalf her minor children, the claims Taccara asserts on behalf of her children are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 7. Claims Under Various Statutes

Taccara alleges many grounds for jurisdiction arising under federal law. Doc. 1 at 3. Without providing any support or explanation as to how her complaint falls under these laws, Taccara's complaint mentions: (1) 18 U.S.C. § 1513, (2) 18 U.S.C. § 242, (3) 18 U.S.C. § 241, (4) 42 U.S.C. § 3631, (5) 18 U.S.C. § 1589, (6) 18 U.S.C. § 1592, (7) 18 U.S.C. § 1593, and (8) 42 U.S.C. § 12203. Doc. 1 at 3. Although Taccara cites to a variety of laws, she does not explain how the laws apply to her situation or what actions the defendants allegedly took in violation of the laws. Simply referencing a variety of laws without describing their application does not state a claim upon which relief may be granted. However, this Court has reviewed each statute in light of the factual allegations in Taccara's complaint and can discern no viable claim under any of the cited statutes.

## III. Conclusion

Accordingly, it is

ORDERED that Taccara's motion for leave to proceed in forma pauperis, Doc. 3, is granted. It is further

ORDERED that Taccara's claims against DSS are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Black Bear's claims against Odegard, Standing Cloud, McAllister, Von Savoy, Harris, and Judge Linngren in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii). It is further

ORDERED that Taccara's remaining claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Taccara's motion to appoint counsel, Doc. 4, is denied as moot. It is finally

ORDERED that Taccara's request for transcripts, Doc. 7, is denied as moot.

DATED May 23rd, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE